PER CURIAM.
This disciplinary proceeding is before us on complaint of The Florida Bar and the uncontested report of the referee. Respondent Padgett pled nolo contendere to the two counts of the complaint and agreed there was a factual basis for findings of guilty on both counts. We have jurisdiction, article V, section 15, Florida Constitution, and approve the referee’s findings of fact and adopt his recommendations as to guilt and discipline.
The referee made the following findings of fact concerning each count of the complaint.
[COUNT I]
2.Beginning around 1978, respondent referred several personal injury clients to Dr. J. Hunter Smith for orthopedic treatment. In early 1983, Dr. Smith refused to accept further referrals because respondent failed to properly forward payment either upon settlement of the case or as guarantor under a letter of protection.
3. It appears Dr. Smith held a “blanket” letter of protection from respondent dating back to June 1978 and which letter was never repudiated by the respondent through these proceedings. (See Exhibit A of the Bar's Complaint). Respondent wrote to Dr. Smith by letter dated April 16, 1984 and advised him he had settled five cases and had withheld sufficient funds from the proceeds to pay the balances owed on them. (See Exhibit C to the Bar’s Complaint.) He thereafter failed to promptly forward full payment on the cases and made partial payments in only one. Moreover, in the Benjamin case, respondent forwarded a partial payment to Dr. Smith in the amount of $175.00 by way of an attorney account check dated March 23, 1984 which was not honored due to insufficient funds. Thereafter, respondent forwarded payment by counter check dated April 27, 1984 in the amount of $455.00 leaving a balance outstanding of $168.00 which was still outstanding at the time of this hearing. It would appear the funds were not deposited initially into his trust account as required but handled through his attorney account.
4. In at least three other instances, respondent failed to forward payment to Dr. Smith, despite promises and repeated requests. Senalla Holmes finally paid Dr. Smith directly in December, 1984 after respondent had not forwarded payment as promised the previous October. While he guaranteed the Jacqueline Garcia Account in April 1981, respondent failed to forward $224.64 to Dr. Smith although the case settled in June 1984. The Joseph Fenalon matter was settled in September 1983, and respondent received the funds at or about that time. $232.00 was to be forwarded to Dr. Smith as the medical provider which respondent failed to do and which remains due.
5. In the Sarah Reed matter, respondent forwarded a check in March 1984 *595 totalling $475.00. He, or one of his staff, indicated on the envelope that $300.00 of the check was for his witness fee in the case and that the Judge would only allow $475.00 on the case thus limiting the $700 requested as the fee, when in fact the Judge had placed no limitation.
6. Finally, respondent routinely failed to prepare and execute written settlement statements in these cases as required.
[COUNT II]
7. Respondent failed to forward medical payments to Indian River Medtronics from insurance proceeds received on behalf of the clients. In at least four cases, respondent failed to pay the balances owing on accounts although obligated to do so under letters of protection. The balances remaining due ranged from $100 to $600 for services rendered in the years 1978, 1981 and 1983. Although he received funds in at least two cases from the insurance carrier, he failed to forward payment on to Indian River Medtronics for their portion.
8. In the McDew and Porter matters, respondent told River Medtronics the insurance company had sent all personal injury protection benefits in one check without designating where payment was to be forwarded. In fact, the insurance company mailed separate checks in October 1983 and later sent letters to respondent in March 1984 detailing the breakdown of payments to the medical providers. Although respondent received settlement funds in the Sheard case, he failed to promptly forward an 80% payment to Indian River Medtronics despite promising to do so in June, 1984. Ultimately, respondent forwarded the 80% payment in October, 1985 totaling $480.00 but well after a complaint was filed to The Florida Bar.
9. Finally, respondent has refused to forward payment to Indian River Med-tronics on behalf of Jean Palladini. She claimed that he retained one-third of the proceeds to pay whatever balances remained due with the medical providers whereas respondent has instructed Med-tronics to bill Ms. Palladini directly.
10.In these cases, respondent has also failed to prepare and have executed written settlement agreements as required.
In connection with Count I, the referee recommends that Padgett be found guilty of violating Florida Bar Integration rules 11.02(3)(a) (conduct contrary to honesty, justice or good morals) and 11.02(4) (mishandling trust funds) and Florida Bar Code of Professional Responsibility, Disciplinary Rules 1-102(A)(4) (conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(6) (misconduct reflecting adversely on fitness to practice law), 2-106(E) (failure to prepare and execute written settlement statements), 9-102(B)(3) (inadequate trust records), and 9-102(B)(4) (failing to promptly disburse funds after settlement).
As to Count II, the referee recommends that Padgett be found guilty of violating Integration Rule 11.02(4) (mishandling trust funds) and Disciplinary Rules 2-106(E) (failing to prepare and execute written settlement statements), 6-101(A)(3) (neglecting client’s case), 9-102(B)(3) (inadequate trust records) and 9-102(B)(4) (failing to promptly disburse funds after settlement).
As to disciplinary measures, the referee recommends the following:
Respondent’s plea of nolo contendere to the two counts of the Bar’s complaint was conditioned upon the Bar’s agreeing to recommend as discipline respondent be suspended from the practice of law for three months and one day thereafter until he shall prove his rehabilitation as provided in Rule 11.10(4). In addition, the respondent is to be placed on probation subsequent to his reinstatement for a period of two years during which period of time his trust account will be subject to review by the Bar on a no notice basis and that any necessary audit of the account will be at his expense. Finally, the respondent has agreed to pay over to *596 the Estate of Dr. J. Hunter Smith and Indian River Medtronics any unpaid amounts due and owing them within 30 days of this hearing. This referee also heard argument as to whether the proposed suspension should relate back to the expiration of his present suspension. After considering the length of the proposed suspension agreed upon by the respondent and the Bar, this referee recommends that the proposed suspension relate back to the expiration of the fixed term of the present suspension and thus be nunc pro tunc effective August 8, 1986. It is apparent that the present problems are an outgrowth of respondent’s prior problems which led to his present suspension, more particularly his total mismanagement of his trust account and his recordkeeping.
Padgett was previously suspended for six months with reinstatement conditioned on proof of rehabilitation and payment of costs.* We approve the recommendations of the referee that the previous suspension be extended three months, nunc pro tunc, from August 9, 1986, which time has expired. We reiterate and reimpose the requirement that reinstatement be conditioned on proof of rehabilitation and payment of costs.
Judgment for costs in the amount of $1,113.39 is hereby entered against respondent in the present action, for which sum let execution issue.
It is so ordered.
MCDONALD, C.J., and ADKINS, OVERTON, EHRLICH, SHAW and BARKETT, JJ., concur.

 Fla. Bar. v. Padgett, 481 So.2d 919 (Fla.1986).